## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **CHRISTOPHER M. GATEWOOD,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | |
| **v.** | | ) | **CIV-18-170-C** |
| | | ) | |
| 1. | **COXCOM, LLC d/b/a** | ) | |
| | **COX COMMUNICATIONS,** | ) | |
| | | ) | **ATTORNEY LIEN CLAIMED** |
| | **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT[1]

**COMES NOW** the Plaintiff, Christopher M. Gatewood, and submits this Complaint against Defendant, CoxCom, LLC d/b/a Cox Communications, on the following allegations:

## PARTIES

1.    Plaintiff, Christopher M. Gatewood, is an adult male residing in Cleveland County, Oklahoma.

2.    Defendant, CoxCom, LLC d/b/a Cox Communications, is an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.    This cause of action arises out of Plaintiff's former employment with

---

[1]Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about December 13, 2017, based on violations of Title VII, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"). Plaintiff anticipates filing an Amended Complaint once his claims pending at the EEOC have been fully exhausted.

Defendant and is based on: (a) violations of 42 U.S.C. § 1981; (b) violations of the Family

Medical Leave Act ("FMLA"); (c) violations of the Employee Retirement Income Security

Act ("ERISA"); (d) violations of the Fair Labor Standards Act ("FLSA"); and (d) violations

of the Oklahoma Protection of Labor Act ("OPLA").

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law

claim as it arises out of the same core of operative facts as the federal claims and jurisdiction

over it is vested in this Court under 28 U.S.C. § 1367(a).

5.      All of the actions complained of herein occurred in Oklahoma County,

Oklahoma. Defendant is doing business in said county and regularly conducts business

within the geographical area encompassed by the United States District Court for the Western

District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

6.      Plaintiff, who is Black, began his employment with Defendant on or about

September 7, 1999. He was initially hired as a Telephone Service Technician, but held

several positions thereafter. He ultimately achieved a position as a Homelife Technician in

or around 2013. He held this position until on or about October 23, 2017, at which time he

was wrongfully terminated.

7.      Throughout his lengthy tenure, Plaintiff was an above satisfactory employee.

He consistently received positive performance evaluations, as well as merit pay increases.

8.      Despite his stellar work record, Plaintiff was terminated from his employment on or about October 23, 2017, by Field Services Supervisor Steve Blasingame (who is White) and Field Service Supervisor Kevin Bonebreak (who is White).

9.      Significantly, Plaintiff's termination came on the heels of returning from medical leave.

10.     More particularly, in or around January 2017, Plaintiff was required to undergo surgery on his knee (inpatient treatment) and received continuing medical treatment thereafter.  As such, Plaintiff was required to take FMLA and short-term disability.

11.     After Plaintiff returned from medical leave on or about April 4, 2017, he discovered he had been demoted from an expert-level Homelife Technician, to a proficient-level Technician.  Plaintiff asked Area Operations Manager James "Buddy" Whitcomb (who is White) why he was demoted.  Yet, Whitcomb did not give any reason for the demotion, telling Plaintiff only that he would look into the matter.

12.     A few months later, on or about October 2, 2017, Whitcomb and Blasingame called Plaintiff into a meeting, questioning Plaintiff about lunch breaks he took in or around September 2017, which allegedly exceeded sixty (60) minutes.  Plaintiff explained he often did not have time to take lunch breaks.  And, he had not ever been told that taking a few additional minutes (2-6 minutes) on days he had time to take lunch breaks was against policy.  Moreover, Defendant's written time clock policy allowed for a seven (7) minute grace period.

13.     During the meeting, Whitcomb and Blasingame told Plaintiff that he was to clock out for lunch and clock back in at the next customer's location within sixty (60) minutes.  Plaintiff had not been previously advised of this, and indicated he would do so in the future.

14.     Days later, on or about October 9, 2017, Whitcomb called Plaintiff into another meeting, questioning why Plaintiff's GPS reflected that he left service locations before coding off on job assignments on a few occasions in August 2017.

15.     That is, as a Homelife Technician, Plaintiff was responsible for *inter alia* traveling to customers' homes and installing and troubleshooting home security and other products sold by Defendant.  He was provided a company vehicle, equipped with a Global Positioning System ("GPS"), and received job assignments by logging into a company application via a company-provided tablet.  After completing assignments, Plaintiff used the tablet to code off the jobs.

16.     During the meeting, Plaintiff explained that he coded off on jobs has he had been trained to do.  It was often necessary to move from the service location to access the termination point (i.e., the location at which services are activated/deactivated) to complete the job.  Moreover, because jobs frequently took hours to complete, and Defendant's policies prohibited technicians from eating or using the restroom at customers' homes, technicians often moved from the service location before coding off jobs so as to eat or use the restroom.  And, Plaintiff had been experiencing technical difficulties with his tablet, preventing him

from coding off jobs before he was required to leave for his next scheduled appointment.

17.     After the meeting on October 9, 2017, Plaintiff called Human Resources Representative Cheree Hall, asking why he was being singled out.  However, Hall offered no explanation, stating only that Whitcomb was "gathering information for an investigation and he would let [Plaintiff] know something soon."

18.     Two weeks later, on or about October 23, 2017, Plaintiff was fired – just two months before he became vested in his retirement and entitled to other long-term employee benefits.

19.     Blasingame and Bonebreak claimed the reason for termination was that Plaintiff falsified records, in that, his GPS reflected he moved from service locations before coding off jobs.  However, the stated basis for Plaintiff's termination was pretext.

20.     At no time did Plaintiff falsify company records.  There was no policy in place regarding job coding.  Plaintiff coded off jobs as he was trained to do.  And, other significantly younger, non-Black Homelife Technicians moved from service locations before coding off jobs, yet they were not terminated or otherwise disciplined.

21.     Moreover, Defendant had a progressive disciplinary policy in place which was not followed in terminating Plaintiff.  And, Blasingame admitted that records for Plaintiff's non-Black co-workers were not reviewed to determine whether they too coded off job assignments after leaving service locations.

22.     Further, Defendant failed to pay Plaintiff regular and overtime compensation

for hours he worked in excess of forty (40) hours per week.

23.    More particularly, at all relevant times, Defendant classified Plaintiff as a non-exempt employee, thereby agreeing in accordance with the law to pay Plaintiff an hourly wage for all time worked (i.e., rendering labor and services), as well as an overtime premium rate for all time worked beyond forty (40) hours per week.[2]

24.    Despite such agreement, Plaintiff was required to work in excess of forty (40) hours per week without being paid regular and overtime compensation for such work.

25.    Defendant regularly required Plaintiff to perform integral and indispensable work activities without paying Plaintiff for such work.

26.    By way of example, Plaintiff was firmly instructed by Blasingame that he could not clock-in until the designated start of his shift, i.e., 8:00 a.m., and that he must arrive at the first customer's home by not later than 8:07 a.m.

27.    In light of the foregoing, and the fact that Plaintiff was often required to travel thirty (30) minutes or more to arrive at the first customer's home, Plaintiff was forced to perform work before the start of each of his scheduled shifts (i.e., typically 8 a.m. to 7 p.m, four days per week).

28.    Particularly, in an effort to ensure he arrived at the first customer's home by

---

[2]Defendant's documents reflect that Defendant agreed to pay Plaintiff regular earnings at an hourly rate of $31.54 per hour for all time worked, as well as an overtime premium rate, over and above Plaintiff's regular earnings, for overtime, i.e., all time worked beyond forty (40) hours per week.

8:07 a.m., at least thirty (30) minutes prior to clocking-in each day, Plaintiff was required to check his route by logging into the company application via his assigned tablet.

29.     In addition, per Blasingame's and Whitcomb's instruction during the meeting on  October 2, 2017, Plaintiff was required to clock out for lunch and clock back in at the next customer's location within sixty (60) minutes.

30.     As such, because of the distance Plaintiff was required to travel to arrive at the next customer's location (often thirty (30) minutes or more away), Plaintiff was required to work, traveling to the next customer's location, while clocked-out for lunch so as to not exceed a sixty (60) minute break period.  Consequently, Plaintiff was required to work hours off-the-clock during his lunch break for which he was denied regular and overtime compensation.

31.     The work activities Plaintiff was required to perform while off the clock constitute compensable work time under the FLSA.  However, Defendant failed to pay Plaintiff regular and/or overtime pay for these activities.

32.     These activities also constitute labor and services rendered, for which Defendant agreed to pay Plaintiff at a regular hourly rate and an overtime premium rate. However, Defendant failed to pay Plaintiff regular and/or overtime pay for these activities in violation of Oklahoma state law.

33.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries described hereafter.

## COUNT I: 42 U.S.C. §1981

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

34.     The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination and retaliation.

35.     Plaintiff is entitled to relief under federal law for race discrimination because Plaintiff is Black; he was qualified for his job; he was terminated from his employment; and his job was not eliminated.

36.     Plaintiff is also entitled to relief for retaliation because Plaintiff engaged in protected opposition to discrimination; he suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

37.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

## COUNT II: FMLA

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

38.     The matters alleged above constitute retaliation for Plaintiff's use of medical leave in violation of the FMLA.

39.     Plaintiff was entitled to medical leave because he worked for Defendant, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to his need for leave.

40.     Plaintiff suffered from a serious health condition requiring inpatient treatment (i.e., knee surgery) and continuing medical treatment by a medical provider.

41.     Defendant retaliated against Plaintiff for his use of FMLA leave, demoting and then terminating Plaintiff shortly after he returned from FMLA-qualified leave.

42.     As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

43.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendant's violation of the FMLA, attorneys' fees and costs.

## COUNT III: ERISA

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

44.     The matters alleged above constitute interference with Plaintiff's rights protected by ERISA.

45.     Defendant is prohibited from discharging or otherwise discriminating against a plan participant "for the purpose of interfering with the attainment of any right to which participant may become entitled under the plan." 29 U.S.C. §1140.

46.     Plaintiff is entitled to relief because Defendant engaged in prohibited conduct (i.e., Plaintiff's termination); and Defendant engaged in such prohibited conduct for the purpose of interfering with Plaintiff's ERISA protected rights.

47.     As a result, Plaintiff has sustained loss and damage.

48.     As damages, Plaintiff seeks all damages available under federal law, including, but not limited to, reinstatement, back pay, front pay, attorneys' fees and costs.

## COUNT IV: FLSA

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

49.     The matters described above constitute violations of the FLSA.

50.     At all relevant times, Defendant has been engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.  Plaintiff was an "employee" within the meaning of the FLSA.  And, at all relevant times, Defendant had gross operating revenues in excess of $500,000.

51.     At all relevant times, Plaintiff was not exempt from the overtime wage provisions of the FLSA.

52.     Throughout the applicable statute of limitations period, Plaintiff regularly

worked off-the-clock and in excess of forty (40) hours per workweek.

53.     Defendant failed to pay Plaintiff regular and/or overtime compensation for all hours worked, including hours worked in excess of forty (40) hours per week, by requiring Plaintiff to work off-the-clock and not accounting for such time when calculating Plaintiff's pay.

54.     Defendant's failure to provide Plaintiff regular compensation, as well as overtime compensation at a rate not less than one and one-half his regular rate for hours worked over forty (40) hours in a workweek constitutes a violation of the FLSA, 29 U.S.C. § 207.

55.     By failing to accurately record, report and/or preserve records of all hours worked by Plaintiff, Defendant has filed to make, keep and preserve records with respect to each of its employees sufficient to determine their wages, hours and other conditions and practices of employment in violation of the FLSA.

56.     Defendant's violations of the FLSA were knowing and willful.

57.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered a loss of income and other damages.  As such, Plaintiff is entitled to recover unpaid wages (including unpaid regular and overtime wages), liquidated damages, attorneys' fees costs incurred in connection with this claim and such other legal and equitable relief as this Court deems just and proper.

**COUNT V: OPLA**

For his fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

58.     The matters described above constitute a violation of the OPLA, Okla. Stat. tit. 40 §165.1.

59.     Defendant is an employer as defined in the OPLA, Okla. Stat. tit. 40 §165.1.

60.     At all relevant times, Plaintiff was not classified as an exempt employee under the provisions of the OPLA, Okla. Stat. tit. 40 §165.1.

61.     Under the OPLA, Okla. Stat. tit. 40 §§165.1 and 165.2, employers must pay employees all wages, defined to include compensation owed for labor and services rendered, including overtime pay and similar advantages agreed upon between the employer and employee, in lawful money of the United States, at least twice each calendar month on regular paydays.

62.     Defendant's documents reflect Defendant agreed to pay Plaintiff, an hourly wage for all time worked (i.e, rendering labor and services), as well as an overtime premium rate for all time worked beyond forty (40) hours per week.

63.     Defendant violated the OPLA by failing to compensate Plaintiff for time Plaintiff worked at the regular hourly and overtime premium rates agreed upon by requiring Plaintiff to work off-the-clock each day.

64.     Defendant's violation of the OPLA was knowing and willful.

65.     As a result of Defendant's unlawful conduct, Plaintiff has been damaged.

12

66.    As such, Plaintiff is entitled to all damages provided for by law, including recovery of unpaid wages, liquidated damages, costs and attorneys' fees pursuant to the OPLA, Okla. Stat. tit. 40 §§165.3 and 165.9.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff compensatory damages, lost earnings, liquidated damages, punitive damages, pre-and-post judgment interest, costs, attorneys' fees and all other relief as permitted by law and as deemed equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 21st DAY OF FEBRUARY, 2018.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA # 22341
SHANNON C. HAUPT, OBA #18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net
haupts@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED